## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAULA DEANGELIS,<br><br>    Plaintiff,<br><br>        v.<br><br>BERNARDO HEES, JAGDEEP PAHWA, ANU HARIHARAN, LYNN KROMINGA, GLENN LURIE, KARTHIK SARMA, JOSEPH A. FERRARO, IZILDA P. MARTINS and SRS INVESTMENT MANAGEMENT LLC,<br><br>    Defendants,<br><br>AVIS BUDGET GROUP, INC.,<br><br>    Nominal Defendant. | No. 2:24-cv-05687-JXN-JSA<br><br>*Document Filed Electronically*<br><br>Hon. Julien Xavier Neals<br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT BY NOMINAL DEFENDANT AVIS, THE OFFICER DEFENDANTS, AND THE OUTSIDE DIRECTOR DEFENDANTS

Jaren Janghorbani
Audra J. Soloway
Kristina A. Bunting
**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
jjanghorbani@paulweiss.com
asoloway@paulweiss.com
kbunting@paulweiss.com

Samuel I. Portnoy
One Gateway Center
**GIBBONS P.C.**
Newark, NJ 07102-5310
Tel: (973) 596-4909
sportnoy@gibbonslaw.com

*Counsel for Defendants Bernardo Hees, Anu Hariharan, Lynn Krominga, Glenn Lurie, Joseph A. Ferraro, and Izilda P. Martins, and Nominal Defendant Avis Budget Group, Inc.*

[Additional counsel appear on signature page]

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................... 1

BACKGROUND ................................................................................ 5

    A.   The Parties..................................................................... 5

    B.   Avis's Share Repurchase Program. ...................................... 8

    C.   The Cooperation Agreement Between Avis and SRS. ............... 8

    D.   Plaintiff's Claims. ........................................................... 9

ARGUMENT ................................................................................... 11

I.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD DEMAND FUTILITY.................................................... 11

    A.   Demand Futility is Governed by a Stringent Pleading Standard......... 11

    B.   *Zuckerberg* Prong 1: Plaintiff Does Not Adequately Plead That at Least 3 of the 6 Members of the Avis Board Received a Material Personal Benefit from the Challenged Conduct. ................................. 13

    C.   *Zuckerberg* Prong 2:  Plaintiff Does Not Adequately Plead That at Least 3 of the 6 Members of the Avis Board Face a Substantial Likelihood of Personal Liability. ........................................ 14

    D.   *Zuckerberg* Prong 3:  Plaintiff Does Not Adequately Plead That at Least 3 of the 6 Members of the Avis Board Lack Independence from SRS. ................................................. 28

II.   THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM...................................... 33

    A.   Plaintiff Fails to State a Claim for Breach of Fiduciary Duty or Unjust Enrichment against the Outside Director Defendants for the Share Repurchase Claims (Counts II and IV)............................... 34

    B.   Plaintiff Fails to State an Oversight Claim against the Outside Director Defendants or the Officer Defendants (Count II)................. 35

    C.   Plaintiff Fails to State a Claim Under Section 14(a) Against the Outside Director Defendants or Officer Defendants (Count III)......... 35

    D.   Plaintiff Fails to State a Fiduciary Duty Claim against the Officer Defendants for Alleged Insider Trading (Count I). ........................... 35

i

E.   Plaintiff Fails to State a Claim Under the Delaware General Corporation Law or Avis's Bylaws Regarding the Cooperation Agreement Claim (Count V)................................................................. 38

III.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ............................................................................................... 38

CONCLUSION ...................................................................................................... 39

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.G.* v. *Chester Upland Sch. Dist.*,
  655 F. App'x 125 (3d Cir. 2016) .......................................................................39

*Aronson* v. *Lewis*,
  473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm* v.
  *Eisner*, 746 A.2d 244 (Del. 2000)..............................................................11, 28

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009).........................................................................................38

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007).........................................................................................33

*Brophy* v. *Cities Serv. Co.*,
  70 A.2d 5 (Del. Ch. 1949) ...............................................................................26

*In re Camping World Holdings, Inc. S'holder Deriv. Litig.*,
  2022 WL 288152 (Del. Ch. Jan. 31, 2022)................................................36, 37

*In re Caremark International Inc. Deriv. Litig.*,
  698 A.2d 959 (Del. Ch. 1996) .....................................................................19, 35

*Cascia* v. *Farmer*,
  No. 2023-0520-KSJM (Transcript Del. Ch. July 1, 2024) ...............................17

*In re Citigroup, Inc. S'holder Deriv. Litig.*,
  964 A.2d 106 (Del. Ch. 2009) .....................................................................15, 20

*In re Clovis Oncology, Inc. Derivative Litig.*,
  2019 WL 4850188 (Del. Ch. Oct. 1, 2019) ...............................................36, 37

*Desimone* v. *Barrows*,
  924 A.2d 908 (Del. Ch. 2007) ..........................................................................20

*In re Discovery Labs. Sec. Litig.*,
  2006 WL 3227767 (E.D. Pa. Nov. 1, 2006) .....................................................25

iii

*Gen. Elec. Co.* v. *Cathcart*,
    980 F.2d 927 (3d Cir. 1992) ................................................................22

*Guttman* v. *Huang*,
    823 A.2d 492 (Del. Ch. 2003) ...........................................................37

*Inst. Invs. Grp.* v. *Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ........................................................23, 24

*Kahn* v. *M & F Worldwide Corp.*,
    88 A.3d 635 (Del. 2014), *overruled in part on other grounds by*
    *Flood* v. *Synutra Int'l, Inc.*, 195 A.3d 754 (Del. 2018)................................28, 29

*Kamen* v. *Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ...........................................................................11

*Kaufman* v. *Allemang*,
    70 F. Supp. 3d 682 (D. Del. 2014).....................................................11

*Khanna* v. *McMinn*,
    2006 WL 1388744 (Del. Ch. May 9, 2006).......................................14

*Kiger* v. *Mollenkopf*,
    2021 WL 5299581 (D. Del. Nov. 15, 2021)........................................5

*In re Kraft Heinz Co. Deriv. Litig.*,
    2021 WL 6012632 (Del. Ch. Dec. 15, 2021), *aff'd*, 282 A.3d 1054
    (Del. 2022) ...................................................................................31, 32

*Marchand* v. *Barnhill*,
    212 A.3d 805 (Del. 2019) .............................................................19, 20

*Beam ex rel. Martha Stewart Living Omnimedia, Inc.* v. *Stewart*,
    845 A.2d 1040 (Del. 2004) ........................................................12, 28, 29

*McElrath* v. *Kalanick*,
    224 A.3d 982 (Del. 2020) ..................................................................15

*Metro Storage Int'l LLC* v. *Harron*,
    275 A.3d 810 (Del. Ch. 2022) ...........................................................25

*Miles* v. *Nat'l Football League*,
    641 F. Supp. 3d 91 (D.N.J. 2022)......................................................33

*Mills* v. *Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)........................................................................................21

*Murashko* v. *Hammer*,
   2018 WL 1022575 (D.N.J. Feb. 22, 2018) ......................................................26

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) .............................................................................5

*Nemec* v. *Shrader*,
   991 A.2d 1120 (Del. 2010) ...............................................................................16

*In re Oracle Corp. Deriv. Litig.*,
   2018 WL 1381331 (Del. Ch. Mar. 19, 2018) ...................................................31

*Park Emps.' and Ret. Bd. Annuity and Benefit Fund of Chicago* v. *Smith*,
   2016 WL 3223395 (Del. May 31, 2016), *aff'd*, 175 A.3d 621 (Del. 2017) .......30

*In re Pfizer Inc. S'holder Deriv. Litig.*,
   722 F. Supp. 2d 453 (S.D.N.Y. 2010) ..............................................................19

*In re Puda Coal, Inc. S'holders Litig.*,
   No. 6476-CS (Del. Ch. Feb. 6, 2013) ...............................................................30

*Rales* v. *Blasband*,
   634 A.2d 927 (Del. 1993) ...........................................................................12, 28

*Robotti & Co., LLC* v. *Liddell*,
   2010 WL 157474 (Del. Ch. Jan. 14, 2010).......................................................14

*In re Rouse Properties, Inc.*,
   2018 WL 1226015 (Del. Ch. Mar. 9, 2018) ................................................18, 31

*Sciabacucchi* v. *Liberty Broadband Corp.*,
   2017 WL 2352152 (Del. Ch. May 31, 2017)....................................................17

*Simons* v. *Brookfield Asset Mgmt., Inc.*,
   2022 WL 223464 (Del. Ch. Jan. 21, 2022).......................................................13

*South* v. *Baker*,
   62 A.3d 1 (Del. Ch. 2012) ................................................................................21

*Steinberg* v. *Dimon*,
    2014 WL 3512848 (S.D.N.Y. July 16, 2014) ....................................................19

*Stone* v. *Ritter*,
    911 A.2d 362 (Del. 2006) ...................................................................................20

*Takata* v. *Riot Blockchain, Inc.*,
    2023 WL 7133219 (D.N.J. Aug. 25, 2023) ........................................................25

*Taylor* v. *Kissner*,
    893 F. Supp. 2d 659 (D. Del. 2012).............................................................14, 26

*Teamsters Union 25 Health Servs. & Ins. Plan* v. *Baiera*,
    119 A.3d 44 (9th Cir. 2015)................................................................................32

*Tilden* v. *Cunningham*,
    2018 WL 5307706 (Del. Ch. Oct. 26, 2018) .....................................................36

*Tracinda Corp.* v. *DaimlerChrysler AG*,
    502 F.3d 212 (3d Cir. 2007) ...............................................................................23

*In re Trados Inc. S'holder Litig.*,
    73 A.3d 17 (Del. Ch. 2013) ................................................................................25

*TVI Corp.* v. *Gallagher*,
    2013 WL 5809271 (Del. Ch. Oct. 28, 2013) .....................................................20

*United Food & Com. Workers Union* v. *Zuckerberg*,
    262 A.3d 1034 (Del. 2021) .........................................................................3, 12, 27

*In re Vaxart, Inc. S'holder Litig.*,
    2021 WL 5858696 (Del. Ch. Nov. 30, 2021) ....................................................16

*W. Palm Beach Firefighters' Pension Fund* v. *Moelis & Co.*,
    311 A.3d 809 (Del. Ch. 2024), *appeal pending*, No. 304, 2024
    (Del.) ...................................................................................................................27

*In re Walt Disney Co. Deriv. Litig.*,
    906 A.2d 27 (Del 2006) ......................................................................................34

*In re Western Nat'l Corp. S'holders Litig.*,
    2000 WL 710192 (Del. Ch. May 22, 2000)..................................................17, 32

*White* v. *Panic*,
783 A.2d 543 (Del. 2001) ................................................................................11

**Statutes**

8 Del. C. § 102(b)(7) ...............................................................................15, 34

8 Del. C. § 141 ...................................................................................10, 27, 38

8 Del. C. § 174 ..............................................................................................15

15 U.S.C. § 78n(a)(1) ....................................................................................10

15 U.S.C. § 78u-4(b)(1) .................................................................................23

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................*passim*

Fed. R. Civ. P. 23.1 .............................................................................*passim*

Fed. R. Civ. P. 23.1(b) ...................................................................................27

Fed. R. Civ. P. 23.1(b)(3) ..............................................................................11

Nominal Defendant Avis Budget Group, Inc. ("Avis" or the "Company"), Defendants Bernardo Hees, Anu Hariharan, Lynn Krominga, Glenn Lurie (the "Outside Director Defendants"), and Joseph A. Ferraro, and Izilda P. Martins (the "Officer Defendants," collectively with Avis and the Outside Director Defendants, "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Amended Verified Stockholder Derivative Complaint (the "Complaint" or "¶") under (i) Federal Rule of Civil Procedure 23.1 and Delaware law for failure to make a pre-suit demand on the Company's board of directors (the "Board") or adequately plead that demand should be excused as futile and (ii) Rule 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

Plaintiff purports to bring this derivative action on behalf of Nominal Defendant Avis. She seeks to stand in Avis's shoes and sue—on Avis's behalf—the Company's current directors, certain current officers, and one of its shareholders, SRS Investment Management LLC ("SRS"). But Plaintiff's theory of wrongdoing is squarely refuted by the very documents on which she relies in the Complaint, and this meritless case should be dismissed with prejudice.

The crux of Plaintiff's claim is that Avis's officers and directors permitted Avis to repurchase some of its outstanding shares under a share repurchase program. Plaintiff contends that Avis's share repurchases had the effect of decreasing the

1

number of overall shares outstanding, thereby increasing the percentage of shareholder SRS's position—allegedly permitting SRS to obtain control of Avis without paying a control premium. But SRS was not a controlling stockholder: it owned less than 50% of Avis's outstanding voting power and had only two seats on the six-member Board. Moreover, the Avis Board negotiated a contract with SRS—which is incorporated in the Complaint—that barred SRS *in perpetuity* from obtaining more than 35% of Avis's outstanding voting power. The core theory of the Complaint is, quite simply, wrong. All the Defendants made Plaintiff aware of this defect in the Complaint in their pre-motion letters (ECF 27, 28), and Plaintiff has never explained how her claims can possibly survive in light of this defect (ECF 31).

Not only is the core theory of the Complaint defective, but this lawsuit also fails to satisfy controlling Delaware law for derivative actions in numerous respects, each of which is a ground for dismissal:

*First*, Plaintiff lacks standing to assert any claim under Federal Rule of Civil Procedure 23.1 and governing Delaware law. The decision to assert claims on behalf of Avis belongs to Avis's Board of Directors, not Plaintiff. Stockholders like Plaintiff who believe a corporation should undertake litigation must either make a demand on the Board to pursue those claims, or plead (and later prove) that a pre-suit demand would have been futile. Plaintiff has chosen the latter course. She must

therefore allege with particularity facts showing that at least three of Avis's six directors were not capable of exercising their disinterested and independent business judgment regarding the present suit because they (1) received a material personal benefit from the alleged misconduct, (2) face a substantial likelihood of personal liability, or (3) lack independence from SRS (who Plaintiff alleges received an improper benefit). *See United Food & Com. Workers Union* v. *Zuckerberg*, 262 A.3d 1034, 1058 (Del. 2021). The Complaint does not contain particularized facts meeting any one of these three *Zuckerberg* prongs.

*Zuckerberg* **Prong 1**: Plaintiff does not plead facts sufficient to meet *Zuckerberg* prong 1 because she concedes that four of Avis's directors—Hariharan, Krominga, Lurie and Hees (the "Outside Director Defendants")—did not receive any material personal benefit from the misconduct alleged in the Complaint.

*Zuckerberg* **Prong 2**: Plaintiff fails to plead particularized facts showing that the four Outside Director Defendants are substantially likely to face personal liability for any claim pleaded in the Complaint. That is because each claim is meritless. Plaintiff's breach of fiduciary duty claim (Count II) fails because (1) Avis's stock repurchase program *did not* allow SRS to obtain control of Avis, and (2) the Complaint does not allege that the Outside Director Defendants acted in bad faith or consciously disregarded red flags in overseeing Avis. Plaintiff's Section 14(a) claim for misleading statements in proxy materials (Count III) fails because

3

none of the proxy statements at issue asked shareholders to vote on anything Plaintiff says caused harm. The Outside Director Defendants are not alleged to have been unjustly enriched to Avis's detriment or to have engaged in insider trading (Counts I and IV). And Plaintiff fails to plead that the Outside Director Defendants face any personal liability for purportedly invalid provisions in the agreement between SRS and Avis (Count V).

*Zuckerberg* **Prong 3**: This prong is also not satisfied because Plaintiff concedes that three directors—Hariharan, Krominga, and Lurie—are independent from SRS (whose conduct is at issue in this lawsuit). As to the fourth director, Bernardo Hees, none of Plaintiff's allegations regarding his former role as Avis's Executive Chairman, his compensation, or his lack of independence under the NASDAQ listing standards are sufficient to adequately allege that Hees had a disabling relationship with SRS that impacted his independence.

For all these reasons, Plaintiff has failed to satisfy any *Zuckerberg* prong, and Plaintiff's claims should be dismissed for failure to plead demand futility.

*Second*, the Complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff fails to state any plausible claim for relief against the Outside Director Defendants and Officer Defendants. Plaintiff's claims against the Outside Director Defendants fail for the reasons outlined above. As for the claims against the Officer Defendants, neither sat on the Board,

and the Complaint does not plead that any Outside Director was unable independently to assess a demand to sue the Officer Defendants. Moreover, Plaintiff fails to state a claim for insider trading or unjust enrichment against the Officer Defendants, Ferraro and Martins, because Plaintiff does not identify what confidential information (if any) they possessed at the time of their trades, or how they purportedly used confidential information belonging to Avis to profit from their stock sales.

## BACKGROUND[1]

### A.    The Parties

**<u>Avis</u>**.  Avis is a leading provider of mobility solutions, from car and truck rental to car sharing.  ¶ 66.  Avis is a public company with shares trading on the NASDAQ under the symbol CAR, Ex.1, and it is incorporated in Delaware.[2]  ¶ 11.

---

[1]  Solely for purposes of this motion to dismiss, Defendants treat the Complaint's nonconclusory factual allegations as true.  The Court may also consider matters incorporated by reference or integral to the claims and items subject to judicial notice, including SEC filings.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (taking judicial notice of SEC filings).

[2]  Citations to "¶_" refer to paragraphs in the Amended Verified Stockholder Derivative Complaint, ECF 18, unless otherwise noted.  Citations to "Ex." refer to the exhibits to the Declaration of Kristina A. Bunting filed herewith.  "On a motion to dismiss, the Court may take judicial notice of matters of public record, including a certificate of incorporation." *Kiger* v. *Mollenkopf*, 2021 WL 5299581, at *6 n.6 (D. Del. Nov. 15, 2021).

**SRS**.  SRS Investment Management, LLC (defined above as "SRS") serves as investment manager to certain investment funds, and has investment discretion with respect to the shares of common stock held by those funds.  Ex. 2 (Avis's Schedule 14A Definitive Proxy Statement as filed with the SEC on Apr. 3, 2024 ("2024 Proxy")) at 19 n.4.  In 2015, SRS owned about 10 million shares of common stock, representing about 9.4% of Avis's then-outstanding stock.  ¶ 76.  Over time, SRS gradually increased its minority position.  ¶¶ 83–86, 91, 98 (describing SRS's increasing share ownership to approximately 18.4 million in 2023).  As of March 14, 2024, shortly before this suit was filed, SRS owned approximately 17.4 million shares, representing 48.9% of Avis's then-outstanding shares.  ¶ 102.

**Board of Directors**.  Avis is governed by a board of directors (as defined above, the "Board").  ¶¶ 12–17.  At the time this action was filed, the Board had six members.  *Id.*  Four of these Directors—Hees, Krominga, Lurie and Hariharan—are outside directors unaffiliated with SRS and, as acknowledged in the Complaint, serve on various committees or serve in roles that involve overseeing the Company:

- **Bernardo Hees** joined the Board in February 2020.  He served as Executive Chair from July 2020 to May 2024, when he stepped down from his role as Executive Chair but continued to serve as a director.  ¶ 12; Ex. 2 (2024 Proxy) at 1, 11.

- **Lynn Krominga** joined the Board in 2006 and is a member of the Compensation Committee and Chair of the Corporate Governance Committee.  ¶¶ 15, 23.

- **Glenn Lurie** joined the Board in May 2018 and is Chair of the Audit Committee and a member of the Compensation Committee.  ¶¶ 16, 24.

- **Anu Hariharan** joined the Board in January 2022.  ¶ 14.

Two members of the Board of Directors are affiliated with SRS:

- **Jagdeep Pahwa** joined the Board in April 2018.[3]

- **Karthik Sarma** joined the Board in May 2020 and is Chair of the Compensation Committee.  ¶ 17.

   **Avis Senior Executives**.  Defendants Ferraro and Martins do not sit on the Avis Board.  Defendant Ferraro serves as President and CEO, and Defendant Martins is Executive Vice President.  ¶¶ 18–19.

   **Plaintiff DeAngelis**.  Plaintiff purports to be a current stockholder of Avis and to have owned shares "at all times since April 2022."  ¶ 7.

---

[3]   Although the Complaint alleges that Pahwa joined the Board in April 2019, ¶ 13, this is incorrect.  He in fact joined the Board in April 2018.  Ex. 2 (2024 Proxy) at 7.

## B.    Avis's Share Repurchase Program.

In 2013, the Board of Avis authorized a share repurchase program, which it expanded in 2014, 2015, 2016, 2018, and February 2023.  ¶¶ 121–23, 128.  Under the program, Avis purchased publicly traded shares from shareholders, thereby returning capital to its shareholders and causing the number of outstanding publicly traded shares of Avis stock to decline.  Ex. 2 (2024 Proxy) at 1.

## C.    The Cooperation Agreement Between Avis and SRS.

The crux of Plaintiff's Complaint is that, as a result of the share repurchase program, Avis and its Board allowed SRS to obtain a purportedly controlling interest in SRS.  In particular, on a date the Complaint does not identify, Plaintiff alleges that "SRS increased its control over Avis up to approximately 49.3% of voting control by having Avis repurchase its own shares thus increasing SRS's percentage ownership without SRS having to pay for control."  ¶ 88.

But Plaintiff ignores that, as SRS increased its Avis stock ownership and gained additional voting power, Avis's Board *took affirmative steps to cap SRS's voting power*.  The Complaint expressly incorporates and relies upon an agreement between Avis and SRS, the Fourth Amended and Restated Cooperation Agreement (the "Cooperation Agreement"), dated December 23, 2022, and publicly disclosed on December 27, 2022, ¶ 109–111, Ex. 1, which contains an express provision limiting SRS's voting power to 35%.  Specifically, the Cooperation Agreement

8

provides that, to the extent SRS owns shares exceeding 35% of Avis's shares outstanding, such shares are voted pro rata with all other votes, meaning that SRS's voting influence is limited to 35% (the "Voting Limitation"). Ex. 1 (Cooperation Agreement) § 4(b). This provision of the Cooperation Agreement, Section 4(b), does not expire. *Id.* Plaintiff cites the Cooperation Agreement, but ignores this critical provision in her Complaint.

### D.    Plaintiff's Claims.

The Complaint asserts six causes of action in five counts. Counts II and IV concern Plaintiff's claim that Avis's officers and directors, through Avis's share repurchase program, permitted SRS to obtain control of Avis without paying a control premium to Avis's minority shareholders and otherwise failed to properly oversee Avis. Specifically, in Count II, Plaintiff asserts that the Outside Director Defendants and Defendants Pahwa and Sarma (the "SRS Director Defendants") breached their fiduciary duties by approving the share repurchase program that allegedly allowed SRS to obtain control of Avis. ¶¶ 33, 88. In Count IV, Plaintiff alleges that all Defendants were unjustly enriched as a result of SRS obtaining control of Avis. ¶¶ 164–67.

Count III concerns certain purportedly misleading statements and omissions in Avis's proxy materials. Specifically, Plaintiff alleges that the Outside Director Defendants and SRS Director Defendants violated Section 14(a) of the Exchange

Act, 15 U.S.C. § 78n(a)(1), by allegedly approving materially false and misleading proxy statements in 2022, 2023, and 2024 that purportedly misled investors about the relationship between Avis and SRS.  ¶¶ 150–55, 159; *see also* Count II, ¶ 146 (also alleging that directors permitted Avis to make misleading statements and omissions in its proxy statements).

Count I alleges that on December 15, 2023, Defendants Ferraro and Martins[4] traded on unidentified material non-public information and therefore breached their fiduciary duties to Avis by engaging in insider trading. ¶¶ 140–142.

Count V alleges that certain other provisions in the Cooperation Agreement—unrelated to the Voting Limitation that the Complaint ignores—violate Section 141 of the Delaware General Corporation Law and/or Avis's Bylaws or Certificate of Incorporation.  These provisions concern the members and size of Avis's Board and committees (collectively, the "SRS Cooperation Agreement Provisions"), ¶¶ 111, 114, 115, 117, 168–173, and they all expire on December 31, 2024, Ex 1 (Cooperation Agreement) §§ 1, 2.  Plaintiff seeks declaratory and injunctive relief

---

[4]   Count I is also asserted against Defendants SRS, Pahwa, and Sarma in connection with a repurchase of shares by Avis from SRS in August 2023.  ¶¶ 138–140. Their arguments to dismiss Count I are set forth in their Memorandum in Support of the SRS Defendants' Motion to Dismiss Plaintiff's Amended Verified Stockholder Derivative Complaint, filed contemporaneously with this memorandum.

as to each of these provisions, ignoring that they will all expire before this motion will be fully briefed, mooting the relief that Plaintiff requests.

## ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD DEMAND FUTILITY.

Plaintiff acknowledges that she did not make a pre-suit demand on the Avis Board. ¶ 130. She asserts that demand was excused as futile. ¶¶ 130–136. Plaintiff, however, fails to meet her burden under Delaware law to establish demand futility. *See Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09 (1991) (applying law of state where company was incorporated).

### A. Demand Futility is Governed by a Stringent Pleading Standard.

A "cardinal precept" of Delaware law is that "directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson* v. *Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000). The board "has sole authority" to decide whether to pursue suits on behalf of the company. *White* v. *Panic*, 783 A.2d 543, 550 (Del. 2001).

A plaintiff who fails to make a pre-suit demand bears the heavy burden of pleading "with particularity" facts showing that a pre-suit demand would have been futile. Fed. R. Civ. P. 23.1(b)(3). This exacting standard is higher than the standard applicable to a pleading subject to a motion to dismiss pursuant to Rule 12(b)(6). *See Kaufman* v. *Allemang*, 70 F. Supp. 3d 682, 689 (D. Del. 2014) (describing Rule

23.1 as a "heightened pleading standard"). Plaintiff cannot rely on "conclusory statements or mere notice pleading." *Brehm*, 746 A.2d at 254. And "inferences that are not objectively reasonable cannot be drawn in the plaintiff's favor." *Beam ex rel. Martha Stewart Living Omnimedia, Inc.* v. *Stewart*, 845 A.2d 1040, 1048 (Del. 2004). Plaintiff may not usurp the Board's authority absent strict compliance with Rule 23.1 and Delaware law.

Under well-settled Delaware law, the directors are also "entitled to a *presumption* that they were faithful to their fiduciary duties." *Beam*, 845 F.2d at 1048 (emphasis in original) (citation omitted). Plaintiff must thus plead "particularized factual statements" that create a reasonable doubt that half of Avis's six-member Board "could have properly exercised its independent and disinterested business judgment in responding to a demand" sufficient to overcome this presumption. *Brehm*, 746 A.2d at 254; *Rales* v. *Blasband*, 634 A.2d 927, 934 (Del. 1993).

In 2021, the Delaware Supreme Court established a three-part "universal test" for assessing demand futility. *See Zuckerberg*, 262 A.3d 1058. This test is "consistent with and enhances" the standards articulated under the court's prior precedents and their progeny, which expressly "remain good law." *Id.* at 1059. Under *Zuckerberg*, courts must consider on a "director-by-director" basis whether each director on the board: (i) "received a material personal benefit from the alleged

misconduct that is the subject of the litigation demand"; (ii) "faces a substantial likelihood of [personal] liability on any of the claims that would be the subject of the litigation demand"; or (iii) "lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of [personal] liability on any of the claims that are the subject of the litigation demand." *Id.*

Because the Avis Board had six directors when this suit was filed, Plaintiff's failure to make a pre-suit demand will not be excused unless Plaintiff pleads with particularity that at least three of the directors are conflicted under any of the three *Zuckerberg* prongs. *Id.* Plaintiff does not satisfy any prong of *Zuckerberg* for half of the Board.

**B.** *Zuckerberg* **Prong 1: Plaintiff Does Not Adequately Plead That at Least 3 of the 6 Members of the Avis Board Received a Material Personal Benefit from the Challenged Conduct.**

To satisfy prong 1 of *Zuckerberg*, Plaintiff must plead with particularity that at least half the Avis Board received a "material personal benefit" from the alleged misconduct in the Complaint. *Id.*; *Simons* v. *Brookfield Asset Mgmt., Inc.*, 2022 WL 223464, at *11 (Del. Ch. Jan. 21, 2022) (*Zuckerberg* Prong 1 not satisfied where plaintiff failed to plead material benefit as to half of directors).

Here, the Complaint makes no allegation that any Outside Director Defendant obtained any benefit *whatsoever* from the transactions it challenges. Plaintiff merely

alleges that the Outside Director Defendants received compensation for their Board service and participation on Board committees.  ¶¶ 22–24.  But it is well established that "the mere fact that a director receives compensation for her service as a board member adds little or nothing to the demand-futility analysis without more." *Khanna* v. *McMinn*, 2006 WL 1388744, at \*16 (Del. Ch. May 9, 2006) (citations omitted); *Robotti & Co., LLC* v. *Liddell*, 2010 WL 157474, at \*15 (Del. Ch. Jan. 14, 2010) ("[D]irector compensation alone cannot create a reasonable basis to doubt a director's impartiality.").  The Complaint plainly fails to satisfy prong 1.

### C.    *Zuckerberg* Prong 2:  Plaintiff Does Not Adequately Plead That at Least 3 of the 6 Members of the Avis Board Face a Substantial Likelihood of Personal Liability.

Plaintiff relies largely on *Zuckerberg* prong 2, asserting that she has standing to bring her claims because at least three of the Outside Director Defendants are substantially likely to be held personally liable for the claims in the Complaint.  But Plaintiff is required to plead particularized facts demonstrating this prong and to do so as to each claim.  *Taylor* v. *Kissner*, 893 F. Supp. 2d 659, 666 (D. Del. 2012) (citations omitted).  Under bedrock Delaware law, the fact that Plaintiff named all of the Outside Director Defendants as defendants does not suffice to plead a substantial likelihood of personal liability.[5]

---

[5]    Delaware courts have long rejected similar arguments that demand is excused "solely because the directors," who would evaluate a demand, "would be

Plaintiff's already exacting pleading burden is further heightened by Avis's certificate of incorporation, which permits claims against directors only for fraud-based conduct and exculpates them from monetary liability for all other conduct. Consistent with Section 102(b)(7) of the Delaware General Corporation Law, Avis's certificate of incorporation shields directors from personal liability to Avis for monetary damages absent (i) breaches of the fiduciary duty of loyalty; (ii) acts or omissions not in good faith or involving intentional misconduct or a knowing violation of law; (iii) liability under 8 *Del. C.* § 174; or (iv) transactions in which they derived an improper personal benefit. Ex. 3 (Amended and Restated Certificate of Incorporation (the "Charter")) § 11. Put simply, directors are exculpated for negligent and even grossly negligent conduct. To plead a substantial threat of personal liability, Plaintiff thus must "plead with particularity that the directors acted with scienter" (i.e., that "their conduct is motivated by an actual intent to do harm, or when there is an intentional dereliction of duty, a conscious disregard for one's responsibilities.") *McElrath* v. *Kalanick*, 224 A.3d 982, 991–92 (Del. 2020) (citations omitted). She fails to do so, as described in detail over the next several pages.

---

deciding to sue themselves." *In re Citigroup, Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009).

### 1. No Substantial Likelihood of Personal Liability for the Share Repurchase Claims (Counts II and IV).

Counts II (breach of fiduciary duty) and IV (unjust enrichment) [6] are premised on the facially incorrect theory that the Outside Director Defendants allowed SRS "to obtain control . . . without paying a control premium" by authorizing Avis to engage in a share repurchase program (the "Share Repurchase Claims"), and thereafter permitted Avis to make false or misleading statements in its proxies regarding its relationship with SRS. ¶¶ 33, 88, 143–49. The Outside Director Defendants face no substantial likelihood of personal liability on these claims.

*First*, it is plain from the face of the Complaint and the documents it incorporates that the Outside Director Defendants did *not* allow SRS to obtain voting control of Avis—contrary to the core theory that Plaintiff advances. The Complaint's central premise is that the Outside Director Defendants "gave away" control of Avis. But, as the Complaint tacitly admits, SRS had only two seats on a six-member Board, and owned less than 50 percent of Avis's outstanding shares.

---

[6] To succeed on a claim for unjust enrichment a plaintiff must establish five elements: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec* v. *Shrader*, 991 A.2d 1120, 1130 (Del. 2010). When an unjust enrichment claim is premised on an alleged breach of fiduciary duty, a finding of no breach defeats the unjust enrichment claim. *In re Vaxart, Inc. S'holder Litig.*, 2021 WL 5858696, at *23 (Del. Ch. Nov. 30, 2021).

¶¶ 12–19, 108, 131.  Moreover, the Cooperation Agreement limits SRS to 35% voting power and requires SRS directors to recuse themselves from all transactions in which SRS would obtain a material benefit.  Ex. 1 (Cooperation Agreement) §§ 4(b), 1(i).  That restriction—especially when viewed alongside SRS's minority position on the Board—defeats a finding that SRS obtained control through the share repurchases because the Cooperation Agreement precludes control.  *See Sciabacucchi* v. *Liberty Broadband Corp.*, 2017 WL 2352152, at *17–20 (Del. Ch. May 31, 2017) (holding that stockholder was not a controller due to "contractual restrictions," including a 35% cap on voting control); *In re Western Nat'l Corp. S'holders Litig.*, 2000 WL 710192, at *6 (Del. Ch. May 22, 2000) (reasoning that contractual limitation restricting number of directors stockholder could nominate militated against finding control).

The fact SRS is specifically precluded from obtaining control of Avis distinguishes this case from the *Hertz* case, on which this lawsuit appears to have been modeled.  In *Cascia* v. *Farmer*, No. 2023-0520-KSJM ("*Hertz*") (Ex. 4 (Transcript Del. Ch. July 1, 2024) at 16–19), the Delaware Court of Chancery allowed a repurchase claim to proceed because a majority of the directors were acting for the benefit of the stockholder that received "hard voting control" from the share repurchase program.  *Id.*  But that is not the case here: SRS designated only two of Avis's six directors, has not obtained majority voting control, and *cannot*

17

obtain majority voting control due to the protections in the Cooperation Agreement. Indeed, in *Hertz*, the court *dismissed* one of the plaintiff's repurchase claims because, as alleged, the repurchase *did not give the stockholder voting control*. *Id.* at 19. Accordingly, the Outside Director Defendants do not face a substantial likelihood of liability for these claims.

*Second*, the Outside Director Defendants also do not face a substantial likelihood of liability because other elements of the claims are unsatisfied:

The Outside Director Defendants are exculpated for negligent and grossly negligent conduct, meaning the Complaint must plead bad faith. *Supra* at 15. Yet the Complaint does not identify what decisions the Board made with respect to the share repurchase program, how they were made, or who made them—let alone that the Outside Director Defendants engaged in purposeful wrongdoing or consciously disregarded their duties to Avis. Plaintiff's assertions amount to "generalized allegations" of the type that courts reject as a matter of course in derivative actions. *E.g.*, *In re Rouse Properties, Inc.*, 2018 WL 1226015, at *14 (Del. Ch. Mar. 9, 2018). The Share Repurchase Claims thus fail for the additional reason that Plaintiff does not plead facts showing that at least three directors acted in bad faith by approving the share repurchase program.

The Complaint also does not plead the other elements of an unjust enrichment claim. Plaintiff fails to allege particularized facts showing that any of the Outside

Director Defendants were personally enriched by the share repurchase program or that there was any detriment to Avis. ¶¶ 164–67. Although Plaintiff points to the Outside Director Defendants' director compensation, ¶¶ 21–26, it is well settled that "a claim for unjust enrichment cannot be maintained where, as here, the 'only enrichment alleged by plaintiffs consists of defendants' salaries, benefits, and unspecified bonuses.'" *Steinberg* v. *Dimon*, 2014 WL 3512848, at *4 (S.D.N.Y. July 16, 2014) (applying Delaware law and holding directors did not face substantial likelihood of personal liability for unjust enrichment claim) (citation omitted); *see In re Pfizer Inc. S'holder Deriv. Litig.*, 722 F. Supp. 2d 453, 465–66 (S.D.N.Y. 2010) (dismissing unjust enrichment claim, reasoning that plaintiffs failed to allege the defendants' compensation was "profligate or paid for an improper purpose").

## 2.    No Substantial Likelihood of Personal Liability for the Oversight Liability Claim (Count II).

Plaintiff also asserts a claim against the Outside Director Defendants for purportedly permitting Avis to make misleading statements and omissions in its proxy statements. ¶ 146 (offering conclusory allegation that the outside directors "allow[ed] inadequate practices and procedures to guide the accurate disclosure of Company information"). Under well-settled Delaware law, this is an oversight claim governed by *Caremark* and "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark International Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996); *accord Marchand* v. *Barnhill*,

212 A.3d 805, 820 n.99 (Del. 2019).  To plead a substantial likelihood of personal liability, Plaintiff was required to plead that (i) "the directors utterly failed to implement any reporting or information system or controls" or (ii) "having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."  *Stone* v. *Ritter*, 911 A.2d 362, 370 (Del. 2006).  The alleged misconduct must be so egregious and persistent that it can only be explained by bad faith.  *Desimone* v. *Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007).

Plaintiff does not come close to meeting her pleading burden.  The Complaint pleads no particularized allegations that the Outside Director Defendants failed to establish a system of controls—indeed, Plaintiff concedes the existence of such a system by acknowledging that Avis had Audit, Governance, and Compensation Committees, and relevant corporate policies.  *TVI Corp.* v. *Gallagher*, 2013 WL 5809271, at *15–16 (Del. Ch. Oct. 28, 2013) (dismissing *Caremark* claim where plaintiffs "acknowledge[d] that the Board maintained an audit committee").  Nor does the Complaint plead plausible factual allegations showing that the Outside Director Defendants actually *knew* of purported wrongdoing but nonetheless did *nothing* in the face of that knowledge.  *See Citigroup*, 964 A.2d at 128.  The Complaint merely seeks to hold them liable for having served on the Board and relevant committees at a time when the challenged public statements were approved.

20

But "an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem." *South* v. *Baker*, 62 A.3d 1, 17 & n.6 (Del. Ch. 2012) (citing cases). Thus, Plaintiff's conclusory allegation that the Outside Director Defendants "allow[ed] inadequate practices and procedures" to guide disclosure of Company information, ¶ 146, does not satisfy her pleading burden.

### 3. No Substantial Likelihood of Personal Liability for the Section 14(a) Claim (Count III).

To plead a Section 14(a) claim, Plaintiff must allege particularized facts showing that the challenged proxy statement asked Avis shareholders to vote on the exact transaction that Plaintiff alleges caused Avis harm. *Mills* v. *Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970) (holding that the voted-on proposal must be an *essential link* in the transaction taking place). Here, none of the three proxy statements at issue actually asked shareholders to vote on any transaction Plaintiff alleges caused Avis harm. In these three proxies, the Board solicited votes on the appointment of directors and auditors, not any transaction. ¶¶ 154–159; Ex. 5 (Avis Budget Group, Inc.'s Schedule 14A Definitive Proxy Statement as filed with the SEC on Apr. 8, 2022 ("2022 Proxy")); Ex. 6 (Avis Budget Group., Inc.'s Schedule 14A Definitive Proxy Statement as filed with the SEC on Apr. 5, 2023 ("2023 Proxy")); Ex. 2 (2024 Proxy). Under controlling Third Circuit law, "this is precisely

21

the sort of claim that courts have repeatedly found insufficient." *Gen. Elec. Co.* v. *Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992). In *Cathcart*, for example, the Court held that "damages are recoverable under Section 14(a) only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and that transaction was the direct cause of the pecuniary injury for which recovery is sought." *Id.* Director re-election "did not create any cognizable harm because the shareholders' votes did not authorize the transactions that caused the losses." *Id.*

As in *Cathcart*, the harm Plaintiff alleges that Avis sustained has nothing to do with Avis's 2022, 2023, and 2024 proxy statements. ¶¶ 154–159. As Plaintiff admits, these three proxy statements "contained substantially similar proposals and recommendations and descriptions[,]" and, as Plaintiff further admits, each of those proxy statements solicited votes for the "**Election of Directors**[.]" ¶ 155 (emphasis in original). None of these proxy statements solicited shareholder votes to approve any of the transactions Plaintiff alleges were harmful to Avis. ¶ 156. Like in *Cathcart*, these proxy statements did not solicit "votes for a specific corporate transaction requiring shareholder authorization." *Cathcart*, 980 F.2d at 933. Accordingly, the proxy statements "did not create any cognizable harm because the shareholders' votes did not authorize the transactions that caused the losses." *Id.*

22

Plaintiff's claim also fails for the independent reason that the proxies contained no false or misleading statements. Plaintiff must allege that a proxy contained a materially false or misleading statement that caused injury to Avis. *Tracinda Corp.* v. *DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007). Plaintiff must identify "with particularity" each statement alleged to be misleading and "the reason or reasons why the statement is misleading"—i.e., the "who, what, when, where, and how" of the misstatement or omission. 15 U.S.C. § 78u-4(b)(1); *Inst. Invs. Grp.* v. *Avaya, Inc.*, 564 F.3d 242, 253, 259 (3d Cir. 2009) (citations omitted). Plaintiff has not done so.

*First*, Plaintiff alleges that the three proxy statements failed to disclose that Defendant Sarma has an interest in SRS. ¶ 159 (1). But the 2022, 2023, and 2024 proxy statements all disclose that Defendant Sarma "is the Managing Partner at SRS, which he founded in 2006." Ex. 5 ( 2022 Proxy) at 9; Ex. 6 (2023 Proxy) at 9; Ex. 2 (2024 Proxy) at 9. Plaintiff does not attempt to explain how this disclosure is deficient or misleading in any way, let alone with particularity.

*Second*, Plaintiff alleges that the three proxy statements fail to "fairly and accurately" describe the share buyback program. ¶ 159 (2). But Plaintiff ignores that these three proxy statements each explicitly mention that Avis repurchased 14.3 million, 16.7 million, and 4.3 million shares in the 2022, 2023, and 2024 proxy statements, respectively. Ex. 5 (2022 Proxy) at 21; Ex. 6 (2023 Proxy) at 22; Ex. 2

(2024 Proxy) at 23. Plaintiff does not assert why this description is unfair or inaccurate and thus fails to allege the "who, what, when, where, and how" of this supposed misstatement or omission, which is dispositive. *Avaya*, 564 F.3d at 253.

*Third*, Plaintiff alleges that the three proxy statements were inadequate by failing adequately to disclose the Cooperation Agreement. ¶ 159 (3 and 6). Again, not so. The Cooperation Agreement was itself filed publicly on multiple occasions (Ex. 1 (Dec. 27, 2022 Form 8-K) at Ex. 10.1; Ex. 7 (Avis Form 10-K, as filed with the SEC on February 16, 2023) at Ex. 10.9); and the terms of the Cooperation Agreement were disclosed in the proxy statements. Ex. 5 (2022 Proxy) at 7, 32; Ex. 6 (2023 Proxy) at 7, 32; Ex. 2 (2024 Proxy) at 7, 32. Plaintiff is simply wrong that the Cooperation Agreement was not disclosed.

*Fourth*, Plaintiff cites an August 2023 share sale in a "broker-to-broker" transaction from SRS to Avis, and claims that it was a related-party transaction that required disclosure in the proxy.[7] ¶ 159. As Plaintiff admits, this sale was "broker-to-broker" and the transaction was on the open market at then-existing share prices. ¶ 93. The sale did not involve any commitment by either party—Avis or SRS—to buy or sell any shares. Plaintiff does not allege otherwise. Plaintiff alleges only, in

---

[7]  This allegation conflicts with Plaintiff's central theory. Plaintiff cites a sale of shares from SRS to Avis, which actually *decreased* SRS's relative ownership. This sale thus runs contrary to Plaintiff's main theory that Avis allowed SRS to *increase* its proportionate ownership.

conclusory fashion, that the sale was a related party transaction with no factual support or averment, which is fatal to her claim. *See, e.g.*, *Takata* v. *Riot Blockchain, Inc.*, 2023 WL 7133219, at *8 (D.N.J. Aug. 25, 2023) (dismissing disclosure claim where plaintiff "fail[ed] to provide any support for the notion that" the transaction met the elements of a related-party transaction).[8]  Moreover, the August 2023 share sale was disclosed in other Avis public filings, which is an independent reason for dismissal.  *See In re Discovery Labs. Sec. Litig.*, 2006 WL 3227767, at *11 (E.D. Pa. Nov. 1, 2006) (dismissing Section 10(b) claims because "prior public disclosure negates a finding that material information was withheld").  For example, Avis published to its investor website SRS's and Sarma's Form 4 for the August 2023 repurchase and a Schedule 13D amendment regarding the same.  Exs. 8, 9, 10.

---

[8]  Plaintiff obliquely alleges that the purported "related party transaction" "implicates 'entire fairness' review."  ¶ 139.  But "entire fairness review" is not itself a cause of action; it is a standard for evaluating whether the conduct in question amounted to a breach of fiduciary duty, which Plaintiff does not allege in Count III.  *Metro Storage Int'l LLC* v. *Harron*, 275 A.3d 810, 841–42 (Del. Ch. 2022).  In any event, "entire fairness review" investigates whether the "process" and "price" of the challenged transaction were fair, and here, Plaintiff has alleged no process issues and conceded that the transaction occurred "at the then market price" (¶ 93), which precludes the conclusion that the transaction was not entirely fair, even if such review applied.  *See, e.g.*, *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 78 (Del. Ch. 2013) (holding that stockholder failed to prove breach of fiduciary duty because "the common stockholders received in the merger the substantial equivalent in value of what they had before," i.e., the price was "entirely fair.").

*Finally*, Plaintiff alleges that the three proxy statements failed "to disclose all information required by Rule 229.404" and failed to disclose that Avis did not conduct "appropriate review and oversight" of related party transactions. ¶ 159 (4 and 5). But Plaintiff does not allege with particularity what disclosure required by Rule 229.404 is missing, nor does she state what "appropriate review and oversight" the Outside Director Defendants supposedly failed to conduct. Plaintiff again relies on conclusions rather than particularized factual allegations. *See Murashko* v. *Hammer*, 2018 WL 1022575, at *4, *9 (D.N.J. Feb. 22, 2018) (dismissing derivative claim for failure to plead particularized facts).

### 4.    No Substantial Likelihood of Personal Liability for the Insider Trading Claim (Count I).

The Outside Director Defendants face *no* likelihood of personal liability for the asserted insider trading claim because that claim is not even asserted against them. This claim, asserted under *Brophy* v. *Cities Serv. Co.*, 70 A.2d 5 (Del. Ch. 1949), is only asserted against the SRS Director Defendants and Officer Defendants (Ferraro and Martins). ¶¶ 138–142. The Complaint fails to plead that the Outside Director Defendants face any liability for purported insider trading by either the Officer Defendants or SRS. Thus, the Board can impartially consider whether to bring these claims and Plaintiff's claim should be dismissed. *See Taylor*, 893 F. Supp. 2d at 673 (dismissing insider trading claim where only officer defendants, not members of the board of directors, faced liability).

### 5.    No Substantial Likelihood of Personal Liability for the Cooperation Agreement Claim (Count V).

Plaintiff seeks a declaration and certain other injunctive relief on the basis that certain provisions of the Cooperation Agreement (separate from the Voting Limitation provision) are invalid under Section 141 of the Delaware General Corporation Law or otherwise violate Avis's Bylaws or Charter.  ¶¶ 119, 168–73; Compl., Prayer for Relief C.1.  The Outside Director Defendants do not face a substantial likelihood of being held liable for this claim for three reasons: *First*, the claim is pleaded in conclusory fashion.[9]  *Second*, even if adequately pleaded, the Complaint seeks injunctive relief against the Company, and no individual director would be held personally liable for any misconduct or damages, which is dispositive under *Zuckerberg*.  262 A.2d at 1054 (directors only face personal liability if they face risk of monetary liability).  *Third*, although the Complaint describes the challenged provisions as "ongoing" (¶ 173), the Complaint ignores that, on its face, the Cooperation Agreement expressly says that these provisions expire on December

---

[9]    The Delaware case upon which Plaintiff's theory appears to be based—*W. Palm Beach Firefighters' Pension Fund* v. *Moelis & Co.*, 311 A.3d 809 (Del. Ch. 2024), *appeal pending*, No. 304, 2024 (Del.)— is distinguishable because, here, Plaintiff's Complaint fails to plead with particularity how each specific challenged provision violates Section 141 or Avis's Bylaws or Charter; her allegations are instead wholly conclusory.  This failure to raise particularized allegations is fatal to Plaintiff's claim.  *See* Fed. R. Civ. P. 23.1(b); *Zuckerberg*, 262 A.3d at 1047.  In addition, *W. Palm Beach Firefighters' Pension Fund* is pending appeal and no appellate decision has reached the same conclusion.

31, 2024.  Ex. 1 (Cooperation Agreement) §§ 1, 2.  Even the claim for injunctive relief against Avis will be entirely mooted once these provisions expire.

*****

For these reasons, the Complaint does not plead a substantial likelihood of personal liability of the Outside Director Defendants for any claim in the Complaint under *Zuckerberg* prong 2.

### D.    *Zuckerberg* **Prong 3:  Plaintiff Does Not Adequately Plead That at Least 3 of the 6 Members of the Avis Board Lack Independence from SRS.**

Plaintiff also does not satisfy prong 3 of *Zuckerberg*, which requires her to plead that three of the Outside Director Defendants lack independence from SRS. Under Delaware law, "[i]ndependence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences."  *Aronson*, 473 A.2d at 816.  "In order to show lack of independence, the complaint of a stockholder-plaintiff must create a reasonable doubt that a director is not so 'beholden' to an interested director [or stockholder] that his or her 'discretion would be sterilized.'"  *Beam*, 845 A.2d at 1050 (quoting *Rales*, 634 A.2d at 936).  "Bare allegations" of disabling ties do not suffice; instead, "[t]he inquiry must be whether, applying a subjective standard, those ties were *material*, in the sense that the alleged ties could have affected the impartiality of the individual director."  *Kahn* v. *M & F Worldwide Corp.*, 88 A.3d 635, 649 (Del. 2014)

(emphasis in original) (citations omitted), *overruled in part on other grounds by Flood* v. *Synutra Int'l, Inc.*, 195 A.3d 754 (Del. 2018). In other words, here, Plaintiff must plead with particularity that at least three of Avis's directors "would be more willing to risk [their] reputation[s] than risk the relationship with the interested [party]"—here, SRS—when considering a litigation demand. *Beam*, 845 A.2d at 1052 (citations omitted).

### 1. The Complaint Essentially Concedes That Krominga (1), Lurie (2), and Hariharan (3) Are Independent.

Plaintiff does not allege any facts suggesting that directors Krominga, Hariharan, and Lurie lack independence from SRS or any other Defendant. ¶¶ 129–137. These three directors were therefore independent and fully capable of considering a pre-suit demand.

### 2. Hees (4) is Independent.

Plaintiff conclusorily asserts that Hees is "not independent" from SRS. ¶ 135. But the Complaint does not plead actual facts showing a disabling relationship, such as uniquely close personal or professional ties between Hees and SRS. *See, e.g.*, *Beam*, 845 A.2d at 1051 (doubts about independence may arise from "financial ties, familial affinity, a particularly close or intimate personal or business affinity or . . . evidence that in the past the relationship caused the director to act non-independently"). Instead, Plaintiff relies on conclusory allegations that Delaware courts routinely reject.

*First*, Plaintiff points to the fact that Hees was previously nominated and elected as Executive Chairman of Avis, a position deemed "non-independent" by Avis in its proxy. ¶ 108. But Avis disclosed that Hees lacked independence from *Avis*, not from *SRS*. Ex. 2 (2024 Proxy) at 10. And, in any event, Hees's role as Executive Chair is irrelevant because, before Plaintiff filed her original Complaint (ECF 1), Avis had announced—and disclosed in the 2024 Proxy, which Plaintiff incorporates by reference and relies upon for her claims—that Hees would step down as Executive Chair and he subsequently did so on May 22, 2024. Ex. 11 (Avis Press Release Dated Nov. 1, 2023); Ex. 2 (2024 Proxy) at 1, 7. Under Delaware law, Plaintiff cannot "lock in" a "stale" board; the relevant board for assessing demand futility is the board reflecting the new composition—here, that is the Avis Board on which Hees serves as a director, but not as Executive Chair. *Park Emps.' and Ret. Bd. Annuity and Benefit Fund of Chicago* v. *Smith*, 2016 WL 3223395, at *9–11 (Del. May 31, 2016), *aff'd*, 175 A.3d 621 (Del. 2017); *accord* Ex. 12 (Transcript of Oral Argument and the Court's Ruling at 16–17, *In re Puda Coal, Inc. S'holders Litig.*, No. 6476-CS (Del. Ch. Feb. 6, 2013)).

*Second*, Plaintiff alleges that Hees lacks independence from SRS "because [Hees's] Avis compensation depends on Sarma's decisions as chair of the Compensation Committee" and because his compensation from Avis was allegedly $3.8 million, $5.09 million, $5.16 million and $5.5 million in 2020, 2021, 2022, and

30

2023, respectively. ¶ 135. But it is the Compensation Committee, not Sarma alone, that determines executive compensation, and Krominga and Lurie, whose independence Plaintiff does not challenge, also sit on the Compensation Committee, meaning that the Committee is majority independent. ¶¶ 23–24, ¶ 26. Because Plaintiff concedes that the Committee *as a whole* (rather than any single member) makes compensation decisions, ¶ 26, the Complaint does not allege that Hees lacks independence from SRS. *See Rouse*, 2018 WL 1226015, at *14 (dispositive that alleged controller "had no ability to dictate the terms of [the executive's] compensation" where compensation committee had two other members).

Even if Hees's compensation was determined by Sarma alone (contrary to the Complaint), Plaintiff also bears the burden under Delaware law to show that Hees' allegedly excessive compensation was *material* to him. *See In re Oracle Corp. Deriv. Litig.*, 2018 WL 1381331, at *18 (Del. Ch. Mar. 19, 2018) ("lucrative compensation" alone insufficient to undermine independence absent allegations that compensation was "material" to director); *In re Kraft Heinz Co. Deriv. Litig.*, 2021 WL 6012632, at *12 n.124 (Del. Ch. Dec. 15, 2021), *aff'd*, 282 A.3d 1054 (Del. 2022) (same). Here, the Complaint does not include any allegations—particularized or otherwise—that Hees's Avis compensation was material to him in the context of his personal financial circumstances. To the contrary, Hees earned $27.7 million in his final full year as CEO of his prior employer. Ex. 13 (The Kraft Heinz Co.'s

Schedule 14A Definitive Proxy Statement as filed with the SEC on March 27, 2020) at 44. And when he joined the Avis Board, Hees invested *$15 million* of his own money in Avis, aligning his interests with shareholders and further demonstrating that he has substantial sources of wealth outside of his prior role as Executive Chair. Ex. 14 (Avis Press Release Dated Feb. 10, 2020). Moreover, the fact that Hees stepped down from that position also demonstrates that his Executive Chair compensation from Avis was *not* material to him. *See In re Western Nat'l*, 2000 WL 710192, at *12 (finding director's "willingness to step aside" from executive chairman role showed "the absence of improper motivations such as a desire to maintain the perquisites and prestige attendant" to his role).

*Third*, Hees's lack of independence under NASDAQ listing standards, ¶ 133, concerns his independence from *Avis*, not from *SRS*. *Kraft Heinz*, 2021 WL 6012632, at *12. A designation under exchange listing rules "carries little weight" in the Delaware independence analysis because "Delaware law does not contain bright-line tests for determining independence but instead engages in a case-by-case fact specific inquiry based on well-pled factual allegations." *Teamsters Union 25 Health Servs. & Ins. Plan* v. *Baiera*, 119 A.3d 44, 61–62 (9th Cir. 2015).

For these reasons, the Complaint fails to satisfy prong 3 of *Zuckerberg*.

\*\*\*\*\*

Because Plaintiff concedes that she did not make a demand, and the Complaint fails to plead demand futility under any prong of Zuckerberg, the Complaint should be dismissed in its entirety.

## II.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

To survive a Rule 12(b)(6) motion, each of Plaintiff's claims must be pled with sufficient detail to be "plausible on [their] face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  Dismissal is warranted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief" because of a deficiency in the plaintiff's legal theory. *Id.* at 558 (citations omitted).  The Court "may consider document[s] integral to or explicitly relied upon in the complaint" as well as "any undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Miles* v. *Nat'l Football League*, 641 F. Supp. 3d 91, 94 n.1 (D.N.J. 2022) (quoting *In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (citations omitted)).  The Court can consider the documents Plaintiff has relied on and incorporated by reference, such as certain of Avis's and SRS's public filings, for their full context in deciding this motion.  A review of the Complaint and the entirety of these incorporated documents demonstrates that the Complaint fails to satisfy the 12(b)(6) standard.

Moreover, as noted above, *supra* at 15, Avis's Charter contains a Section 102(b)(7) provision, which exculpates its directors for personal monetary liability except in certain narrow circumstances. Thus, to state a non-exculpated claim against directors, Plaintiff must plead that the Outside Director Defendants engaged in intentional misconduct or consciously disregarded their duties. *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 63 (Del 2006). Plaintiff fails to meet this standard.

A. **Plaintiff Fails to State a Claim for Breach of Fiduciary Duty or Unjust Enrichment against the Outside Director Defendants for the Share Repurchase Claims (Counts II and IV).**

As discussed above in Section I.C.1, the central assumption of the Share Repurchase Claims is that the Outside Director Defendants delivered voting control to SRS without obtaining a control premium. ¶ 88. But that premise is undercut by the Cooperation Agreement that is incorporated by reference. SRS never obtained control because the Voting Limitation in the Cooperation Agreement restricts SRS's voting power to 35%. In addition, Plaintiff's unjust enrichment claim fails because she does not plead any facts showing "an enrichment" of the Outside Director Defendants, an "impoverishment" of Avis, or the absence of any remedy provided by law, each of which is independently fatal to Plaintiff's claim. *See supra* at 16–19.[10]

---

[10] As explained in SRS's motion to dismiss, Plaintiff fails to plead facts showing that SRS was unjustly enriched because SRS never actually obtained control of Avis because of the restrictions in the Cooperation Agreement. *See*

**B.     Plaintiff Fails to State an Oversight Claim against the Outside Director Defendants or the Officer Defendants (Count II).**

As discussed in Section I.C.2, not only is a *Caremark* claim "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment[,]" but Plaintiff did not attempt to plead the mandatory elements for *Caremark* liability to attach, so Plaintiff's claim must be dismissed.  698 A.2d at 967.

**C.     Plaintiff Fails to State a Claim Under Section 14(a) Against the Outside Director Defendants or Officer Defendants (Count III).**

Plaintiff has failed to state a Section 14(a) claim for all the reasons described above in Section I.C.3.  None of the three proxy statements solicited Avis stockholders' votes on any transaction that Plaintiff alleges caused Avis harm. Regardless, the proxy statements contained no false or materially misleading statements.  As such, this Court should dismiss Plaintiff's Section 14(a) claim.

**D.     Plaintiff Fails to State a Fiduciary Duty Claim against the Officer Defendants for Alleged Insider Trading (Count I).**

To state a breach of fiduciary duty claim for alleged insider trading, Plaintiff must plead facts showing that the Officer Defendants possessed material, non-public information ("MNPI") and "used that information improperly by making trades because [they were] motivated, in whole or in part, by the substance of that

---

Memorandum in Support of the SRS Defendants' Motion to Dismiss Plaintiff's Amended Verified Stockholder Derivative Complaint, § 2.A.

information." *Tilden* v. *Cunningham*, 2018 WL 5307706, at *19 (Del. Ch. Oct. 26, 2018). To satisfy the latter requirement, Plaintiff must plead facts to support a reasonable inference that "each sale by each individual defendant was entered into and completed *on the basis of, and because of*, adverse material non-public information." *Id.* (emphasis in original) (citations omitted). At the pleadings stage, "a successful [*Brophy*] claim typically includes allegations" that the insider defendant's trade was "unusually large" including "relative to the defendant's overall stock holdings" or that it was "suspiciously timed." *In re Clovis Oncology, Inc. Derivative Litig.*, 2019 WL 4850188, at *15 (Del. Ch. Oct. 1, 2019). "Pled facts, not speculation, must support a finding of scienter." *Tilden*, 2018 WL 5307706, at *20.

Although Plaintiff alleges that Ferraro and Martins each sold Avis stock once on December 15, 2023, ¶¶ 100–01, and briefly discusses some information related to vehicle delivery delays, ¶¶ 72–75, Plaintiff's claim fails for numerous reasons. In particular, she: (1) fails to specifically identify the MNPI, (2) pleads no facts about when Ferraro or Martins obtained any supposed MNPI, (3) pleads no facts about how either officer used that supposed MNPI to profit from stock sales, and (4) pleads no facts showing that their sales were "motivated, in whole or in part," by any confidential information. Each of these failures independently warrants dismissal of Plaintiff's claim. *See Tilden*, 2018 WL 5307706 at *19; *In re Camping World*

36

*Holdings, Inc. S'holder Deriv. Litig.*, 2022 WL 288152, at *8–9 (Del. Ch. Jan. 31, 2022). Moreover, Plaintiff pleads no factual allegations showing that Ferraro and Martins' trades were suspicious in timing or size. In fact, Ferraro and Martins engaged in similarly sized trades on the exact same day of the month—December 15—in 2022 as in 2023, which undermines any claim that the December 2023 trades were made to profit from MNPI. *See* Ex. 15 (Ferraro Form 4s), Ex. 16 (Martins Form 4s); *In re Clovis*, 2019 WL 4850188 at *16 (rejecting an inference of scienter where the defendant sold 10% of his stock and traded in a consistent pattern). Moreover, Ferraro and Martins sold approximately 7.8% and 15.7% of their holdings, respectively, in December 2023, transaction sizes that were similar to each officer's December 2022 trades. Delaware courts routinely dismiss *Brophy* claims where defendants sold larger volumes. *Guttman* v. *Huang*, 823 A.2d 492, 504 (Del. Ch. 2003) (concluding plaintiffs' complaint failed "to allege particularized facts" that defendants "consciously acted to exploit such superior knowledge" through their sales of 10%, 20%, and 32% of their holdings).

Further, dismissal is also required because Ferraro and Martins are not affiliated with SRS. Plaintiff refers in Count I (her insider trading claim) to an August 2023 sale of stock by SRS. ¶¶ 138–42. But Defendants Ferraro and Martins have no affiliation or connection to SRS. Ferraro and Martins are exclusively Avis

37

executives and as such any allegations about *SRS's* August 2023 sale of stock have nothing to do with either Defendant Ferraro or Defendant Martins.

**E.    Plaintiff Fails to State a Claim Under the Delaware General Corporation Law or Avis's Bylaws Regarding the Cooperation Agreement Claim (Count V).**

Finally, Plaintiff's allegations that provisions of the Cooperation Agreement violated Section 141 of the Delaware General Corporation Law "and/or Avis's by laws or Certificate of Incorporation" fail to state a claim.  ¶ 172.  Plaintiff's claim must be dismissed because, as discussed above in Section I.C.5, (1) it seeks declaratory and injunctive relief as to provisions that are set to expire by their own terms before this motion is fully briefed, rendering the claim a nullity, (2) the Complaint appears to rely on a single Court of Chancery decision that advanced a novel interpretation of the law and is currently being appealed, and (3) the Complaint fails to set out in any detail how each specific challenged provision violates a statute, bylaw, or charter provision.  Thus, these allegations are paradigmatic examples of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice" under Rule 12(b)(6) and must be dismissed.  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

**III.  PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE**

Plaintiff had every opportunity to craft her amended complaint to plead a viable claim—including because she was apprised of her pleading's deficiencies in

Defendants' pre-motion letters.  Yet she still comes nowhere close to pleading facts meeting the stringent requirements of Rule 23.1 and Delaware law.  Nor does she plead any facts in support of numerous of the critical elements necessary to establish a plausible claim for relief under each of her causes of action.  It is therefore evident that any amendment would be futile because the amended complaint "could not be cured by additional facts." *A.G.* v. *Chester Upland Sch. Dist.*, 655 F. App'x 125, 128–29 (3d Cir. 2016)  Plaintiff's complaint should therefore be dismissed with prejudice.  *Id.* (affirming dismissal of complaint with prejudice and denial of leave to amend where amendment would be futile).

## CONCLUSION

The Complaint should be dismissed in its entirety and with prejudice for failure to plead demand futility and to state a claim.

Dated:  November 18, 2024

Respectfully submitted,

s/ *Samuel I. Portnoy*

s/ *Audra J. Soloway*

**GIBBONS P.C.**
Samuel I. Portnoy
Michael V. Caracappa
One Gateway Center
Newark, NJ 07102-5310
Tel: (973) 596-4909
Fax: (973) 639-6218
sportnoy@gibbonslaw.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Jaren Janghorbani
Audra J. Soloway
Kristina A. Bunting
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
jjanghorbani@paulweiss.com
asoloway@paulweiss.com
kbunting@paulweiss.com

Matthew D. Stachel
1313 N. Market Street, Suite 806
P.O. Box 32
Wilmington, DE 19899-0032
mstachel@paulweiss.com

*Counsel for Defendants Bernardo Hees,
Anu Hariharan, Lynn Krominga, Glenn
Lurie, Joseph A. Ferraro, and Izilda P.
Martins, and Nominal Defendant Avis
Budget Group, Inc.*